## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| RICHARD RONQUILLO, Individually and On Behalf of the Statutory Beneficiaries and Heirs of RICHARD ESTRADA, Deceased, and JUDITH ANN ESTRADA, as Representative of the Estate of RICHARD ESTRADA, Deceased,<br><br>　　　　Plaintiffs<br><br>v.<br><br>BRAVO SOUTHWEST, LP LLLP d/b/a BRAVO CADILLAC, and GENERAL MOTORS LLC,<br><br>　　　　Defendants. | § § § § § § § § § § § § § § § § §　CIVIL ACTION NO.: 3:18-cv-16 |

### GENERAL MOTORS LLC'S NOTICE OF REMOVAL

Defendant General Motors LLC ("New GM") removes this action from County Court at Law No. 7, El Paso, Texas to the United States District Court for the Western District of Texas, El Paso Division, pursuant to (1) 28 U.S.C. §§ 1332, 1441 and 1446, (2) 28 U.S.C. §§ 1441 and 1452, Bankruptcy Rule 9027, and (3) based on the following facts:

#### BACKGROUND

1.　On December 14, 2017, New GM was served with a Summons and Petition in an action styled *Richard Ronquillo, Individually and On Behalf of the Statutory Beneficiaries and Heirs of Richard Estrada, Deceased, and Judith Ann Estrada, as Representative of the Estate of Richard Estrada, Deceased*, Case No. 2017-DCV-4103, filed November 22, 2017, in County Court at Law No. 7, El Paso, Texas (the "Action").

2.　This Action arises out of a single-vehicle accident that allegedly occurred on November 24, 2015, when Plaintiffs' decedent Richard Estrada was operating his 2006 Cadillac

1

DTS (VIN 1G6KD57Y26U178616) and was involved in a frontal collision during which the airbags did not deploy ("Subject Accident"). Pet. ¶ 26. Plaintiffs contend that the 2006 Cadillac DTS had an inadvertent key rotation defect that rendered it unreasonably dangerous and caused the accident and their decedent's fatal injuries. *Id*. ¶¶ 27–29.

3.  Plaintiffs seek recovery under theories of strict liability, negligence, fraudulent misrepresentation/fraudulent concealment, breach of implied warranty, and gross negligence. *Id*. ¶¶ 169–226. Under Texas law, all of these claims are subsumed under the products liability action. Tex. Civ. Prac. Rem. Code § 82.001(2) (defining "Products liability action" to include "any action against a manufacturer or seller for recovery of damages arising out of personal injury . . . allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.")

4.  On March 25, 2014, the Judicial Panel on Multidistrict Litigation ("JPML") established MDL 2543, *In re General Motors LLC Ignition Switch Litigation*. Subsequently, on June 9, 2014, the JPML designated the United States District Court for the Southern District of New York as the MDL Court and assigned the Honorable Jesse M. Furman to conduct coordinated or consolidated proceedings in the Ignition Switch Actions. *In re Gen. Motors LLC Ignition Switch Litig.*, MDL No. 2543, ECF No. 266 (J.P.M.L. June 9, 2014), attached as Exhibit A. The JPML transferred an initial group of fifteen actions pending in six federal districts to the Southern District of New York after concluding that it was "undisputed" that cases alleging a defect in the vehicle ignition switch of certain New GM vehicles satisfied the requirements for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. *Id.* at 2.

5.   This Action is one of more than 350 actions (the "Ignition Switch Actions") filed in, or removed to, federal court since February 2014 that assert factual allegations involving allegedly defective ignition switches, including the Cadillac DTS. The Ignition Switch Actions have been brought in at least 39 federal district courts, including in Alabama, Arizona, Arkansas, California, Colorado, the District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, and Texas. *See generally* MDL No. 2543, *e.g.,* ECF Nos. 762, 3074, 1402, attached as Exhibit B: *Bermudez, et al. v. General Motors LLC*, 15-cv-2644 (S.D.N.Y.) (asserting personal injury damages involving numerous Cadillac DTS model year vehicles, among others); *Kats, et al. v. General Motors LLC*, 16-cv-05491-JMF (S.D.N.Y.) (same); *Losey, et al. v. General Motors LLC*, 15-cv-7416-JMF (S.D.N.Y.) (asserting personal injury damages involving 2008 and 2010 Cadillac DTS model year vehicles, among others).

6.   As soon as the Clerk assigns this case a docket number, New GM will notify the JPML that this case is a tag-along action pursuant to Panel Rule 7.1. Because the ignition switch allegations in this case share "one or more common questions of fact" with the other Ignition Switch Actions, this case is appropriate for MDL transfer and consolidation with the other Ignition Switch Actions pending in the Southern District of New York. *See* 28 U.S.C. § 1407(a).

## BASIS FOR REMOVAL

### I.  Jurisdiction Based on 28 U.S.C. §§ 1332, 1441 and 1446.

#### A.  *Parties to the Action*

7.   This Action is removable to this Court under 28 U.S.C. § 1441 because the Court has original jurisdiction under 28 U.S.C. § 1332(a)(3), based on diversity of citizenship of those

parties who are properly joined and an amount in controversy exceeding $75,000, exclusive of interest and costs.

8. Complete diversity of citizenship exists because:

   a. At the time of filing of this suit, Plaintiffs and their Decedent, Richard Estrada, were residents and citizens of the State of Texas. Pet. ¶¶ 2–3.

   b. New GM is not a citizen of Texas. New GM is, and was at the time this lawsuit was filed, a Delaware limited liability company with its principal place of business in Michigan. New GM is 100 percent owned by General Motors Holdings LLC, which is also a Delaware limited liability company with its principal place of business in Michigan. General Motors Holdings LLC, in turn, is 100 percent owned by General Motors Company, a corporation organized under the laws of Delaware with its principal place of business in Michigan.

   c. Defendant Bravo Southwest, LP LLLP d/b/a Bravo Cadillac ("Bravo Cadillac") is a Texas limited partnership with a principal place of business in Texas. Pet. ¶ 4. Bravo Southwest was fraudulently joined, and thus, its citizenship should not be considered for purposes of establishing diversity jurisdiction.

### B. *Defendant Bravo Cadillac is Fraudulently Joined.*

9. Plaintiffs' claims against Defendant Bravo Cadillac are specifically calculated to defeat diversity jurisdiction and deprive New GM of its right to a federal forum. Under the doctrine of fraudulent joinder, a plaintiff cannot defeat federal diversity jurisdiction simply by naming non-diverse defendants. *Salazar v. Allstate Tex. Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006). In determining whether complete diversity exists, a court must disregard the citizenship of defendants when "there is no reasonable basis for predicting that plaintiffs might establish liability against the in-state defendants." *Badon v. R.J.R. Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (citations omitted).

10. A removing defendant may establish fraudulent joinder by showing: (1) actual fraud in the jurisdictional facts presented to the court; (2) that the plaintiffs have no valid cause

of action against the non-diverse defendant; or (3) the claims against the non-diverse or local defendant have no real connection to the claims against the other defendants. *See, e.g., Salazar*, 455 F.3d at 574. The test for the second prong is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). In the Fifth Circuit, "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment. . . . A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties." *Badon*, 224 F.3d at 389–390 (citing *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992)). *See also Smallwood*, 385 F.3d at 573 ("There are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.")

11.     Under Texas law, a product seller that did not manufacture the product is immune from liability for harm caused by the allegedly defective product <u>unless</u> the claimant can prove one of seven acts or circumstances expressly set out in the Products Liability statute. *See* Tex. Civ. Prac. Rem. Code § 82.003(a)(1)–(7); *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 878 (W.D. Tex. 2010). Here, Plaintiffs allege that when Bravo Cadillac sold the subject 2006 Cadillac DTS to their decedent, it knew or should have known the vehicle was defective based upon GM Recall No. 14299 (National Highway Traffic Safety Administration ("NHTSA") Recall 14V-355), which concerns an unintended key rotation defect relating to motor vehicle safety in certain 2007-2011 model year Cadillac DTS vehicles, among others. *See* Pet. ¶¶ 168,

5

210, 218 ("The Subject Vehicle was sold by Defendant Bravo Cadillac in January 2015, after the above recall of the Subject Vehicle. As such, Defendant Bravo Cadillac knew or in the exercise of ordinary care should have known that the Subject Vehicle contained parts that were [defective and unreasonably dangerous]."), 219.[1] Plaintiffs' products liability claim against Bravo Cadillac falls under § 82.003(a)(6), which provides that a non-manufacturing seller can be liable in a product liability action upon proof it "actually knew of a defect to the product at the time [it] supplied the product."

12.     This Action involves similar circumstances to *Benavides v. Chrysler Grp. LLC*, No. 7:14-CV-518, 2014 WL 5507716 (S.D. Tex. Oct. 9, 2014). In *Benavides*, the plaintiff sued the manufacturer, Chrysler, and an in-state motor vehicle dealer (the "seller-dealer") for wrongful death following an accident involving a Dodge pickup truck. *Id.* at *1. Chrysler removed the action to federal court based on complete diversity, arguing that the non-diverse seller-dealer was improperly joined. To resolve the improper-joinder issue, the court pierced the pleadings and conducted a summary inquiry to determine whether discrete and undisputed facts precluded the plaintiff's recovery against the seller-dealer. *Id.* at *5. As in this Action, "the only possible relevant exception" to the seller-dealer's immunity from liability as a non-manufacturing seller was if the plaintiff could prove the seller-dealer knew of the pickup truck's alleged defects when it sold the truck. *Id.* at *4 (citing § 82.003(a)(6)). The court noted that "could have" or "should have" known of a defect was not the standard; rather, the plaintiff had to plead and prove the seller's "*actual knowledge* of the defect." *Id.* (emphasis in original). *See also*

---

[1] *See also* Exhibit C, letter from New GM to NHTSA dated June 20, 2014, subsequently amended on July 2, 2014, pursuant to 49 C.F.R. 573.6, pertaining to the recall, under GM Recall No. 14299, of approximately 3,141,731 2005-2009 MY Buick Lacrosse, 2006-2011 MY Buick Lucerne, 2000-2005 MY Cadillac Deville, 2006-2011 MY Cadillac DTS, 2006-2007 MY Chevrolet Monte Carlo, and 2006-2014 MY Chevrolet Impala vehicles.

*Mix v. Target*, 759 F. Supp. 2d at 881–82 (finding that seller's knowledge of other customer complaints of injuries, and unverified pleadings filed in other lawsuits, did not equate to "actual knowledge" of a "defect" under § 82.003(a)(6) in summary judgment context).

13. Chrysler submitted affidavits from the seller-dealer, swearing it had no knowledge of the truck's alleged defects when they sold it to the plaintiff's decedent. The affiants stated "that they had not received any information—recall notices, bulletins or warnings from the manufacturer, customer complaints, internal correspondence, or media reports—relating to the safety problems that would have made it possible for them to have knowledge of the defects." *Id*. at *5. The court concluded the seller-dealer did not have actual knowledge of the alleged defect when it sold the truck, and "[t]his discrete and undisputed fact means that the [seller-dealer does] not meet the 'actual knowledge' exception to Section 82.003(a) and [is] thus immune to [the plaintiff's] products liability claims." *Id*. at *6. The court held that no reasonable factfinder could find the seller-dealer liable given the allegations in the complaint, and thus Chrysler met its burden to show the non-diverse defendants were improperly joined. *Id*. at *8.

14. Here, Plaintiffs' Petition omitted the discrete and dispositive fact that Bravo Cadillac remedied the GM Recall No. 14299 inadvertent key rotation defect <u>before</u> selling the vehicle. Bravo Cadillac's affidavit shows that it repaired the inadvertent key rotation defect in the subject 2006 Cadillac DTS—pursuant to the protocol in New GM's Product Safety Recall Bulletin for Recall No. 14299—<u>before</u> selling the vehicle to Plaintiffs' decedent. *See* <u>Exhibit D</u>, Affidavit of Miguel Rodriguez, and related Bravo Cadillac Service Records attached thereto (showing that Bravo Cadillac performed the recall repair on October 28, 2014); <u>Exhibit E</u>, excerpts from New GM's Vehicle Inquiry System records (same); <u>Exhibit F</u>, August 2014 Product Safety Recall Bulletin for GM Recall No. 14299 (containing instructions to dealers

regarding the recall repair); Pet. ¶ 25 (alleging that Plaintiffs' decedent bought the subject 2006 Cadillac DTS from Bravo Southwest on or about January 7, 2015). Given Bravo Cadillac's pre-sale repair of the inadvertent key rotation defect, Plaintiffs have no possibility of showing that Bravo Cadillac actually knew the subject 2006 Cadillac DTS had that defect when it sold the vehicle to their decedent. Indeed, the undisputed proof shows the exact opposite: Bravo Cadillac knew, based on its having completed the service procedure specified in New GM's Product Safety Recall Bulletin for Recall No. 14299, that it had <u>remedied</u> the inadvertent key rotation defect described in GM Recall No. 14299 before selling the 2006 Cadillac DTS to Plaintiffs' decedent.

15.     Furthermore, Plaintiffs' Petition does not allege any other acts or circumstances supporting a product liability claim against Bravo Cadillac under § 82.003(a)(1)–(7). Accordingly, Plaintiffs have no possibility of recovery against Defendant Bravo Cadillac as a non-manufacturing seller under § 82.003(a)(1)–(7). *See Benavides*, 2014 WL 5507716, at *3 ("If the [seller-dealer] Defendants are 'sellers' and do not meet any of the exceptions [in § 82.003(a)(1)–(7)], they are immune to all of the causes of action outlined in the complaint."). Therefore, Bravo Cadillac is not a proper party to this products liability Action, and its citizenship should be disregarded for purposes of determining this Court's diversity jurisdiction.

### C. *The Amount-In-Controversy Requirement is Satisfied.*

16.     The amount in controversy in this Action exceeds $75,000, exclusive of interest and costs in that Plaintiffs are seeking damages for wrongful death and survival for all damages allowed under Texas law. Pet. ¶¶ 227–28. More specifically, the wrongful death beneficiaries seek recovery for loss of care, maintenance, support, services, advice, counsel, and reasonably pecuniary contributions that, in reasonable probability, they would have received from Estrada,

8

as well as emotional pain, torment, and mental anguish they sustained because of his death. *Id*. ¶¶ 234–35. Related to the survival cause of action, Plaintiffs seek recovery for medical expenses, funeral expenses, and the physical pain and mental anguish Estrada sustained prior to his death. *Id*. ¶ 238.

17. Furthermore, Plaintiffs' Petition explicitly seeks monetary relief in excess of $1,000,000 and, in specifically addressing diversity jurisdiction amount-in-controversy requirements, they explicitly aver they are seeking more than $75,000. *Id*. ¶¶ 20–21.

18. Courts should first examine the plaintiff's petition to see if it is "facially apparent" that the amount-in-controversy requirement is met. *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. Appx. 62, 66 (5th Cir. 2010). Courts should use "common sense" in the analysis. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995).

19. Plaintiffs' Petition, along with the nature of their claims, demonstrate by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. *De Aguilar v. Boeing Co*., 11 F.3d 55, 57–58 (5th Cir. 1993) (holding it is facially apparent that "claims for wrongful death, terror in anticipation of death, loss of companionship, and funeral expenses" would exceed the jurisdictional amount); *see also In re Silica Prods. Liab. Litig*., 398 F. Supp. 2d 563, 827 (S.D. Tex. 2005) (finding medical expenses, pain and suffering, mental anguish, loss of consortium, and loss of enjoyment "the types of injuries that the Fifth Circuit has held satisfies the 'facially apparent' standard.").

20. Because the controversy in this Action is properly between citizens of different states, and the amount in controversy exceeds $75,000 based on the allegations contained in the Petition, exclusive of interest and costs, New GM may remove this Action pursuant to 28 U.S.C. §§ 1332 and 1441.

## II. **Jurisdiction Based on 28 U.S.C. §§ 1441, 1452, and Bankruptcy Rule 9027.**

21. In addition to jurisdiction based on complete diversity of citizenship of those properly joined and an amount in controversy greater than $75,000, this Action is also properly removable because it is a civil proceeding that (i) arises in a case under 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), and/or (ii) is related to a case under the Bankruptcy Code. This Court thus has jurisdiction pursuant to 28 U.S.C. §§ 157(b), 1331, and 1334(b), and removal to this Court is proper under 28 U.S.C. §§ 1452(a), as well as Rule 9027 of the Federal Rules of Bankruptcy Procedure.

22. On June 1, 2009, Motors Liquidation Company, f/k/a General Motors Corporation ("Old GM") filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court").

23. On July 5, 2009, the New York Bankruptcy Court issued an order ("Sale Order and Injunction") approving the sale ("363 Sale") of substantially all of Old GM's assets to the predecessor of New GM. The sale of assets was free and clear of all liens, claims, and encumbrances, except for certain limited exceptions. *See* Sale Order and Injunction, attached as Exhibit G ¶ 7. The 363 Sale was consummated on July 10, 2009. Ultimately, New GM was transferred certain of Old GM's assets and also assumed certain limited, specifically identified liabilities, as described in the Sale Order and Injunction and Amended and Restated Master Sale and Purchase Agreement ("Sale Agreement").

24. The terms of the Sale Order and Injunction, and the Sale Agreement that it approved, limits New GM's liabilities relating to vehicles and parts sold by Old GM. *See* Exhibit G ¶¶ 44-45; *see also In re Gen. Motors Corp.*, 407 B.R. 463, 481 (Bankr. S.D.N.Y.

2009), *aff'd sub nom., In re Motors Liquidation Co.*, 428 B.R. 43 (S.D.N.Y. 2010), and 430 B.R. 65 (S.D.N.Y. 2010).[2]

25.     The New York Bankruptcy Court reserved exclusive and continuing jurisdiction to interpret and enforce the injunction set forth in the Sale Order and Injunction and to address and resolve all controversies concerning the interpretation and enforcement of the Sale Order and Injunction. *Id.* ¶ 71. Old GM's bankruptcy case is still pending in the New York Bankruptcy Court and that Court has previously exercised its exclusive and continuing jurisdiction to enforce the Sale Order and Injunction to actions filed against New GM, including cases based on alleged defects in Old GM vehicles. *See Trusky v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 12-09803, 2013 Bankr. LEXIS 620 (Bankr. S.D.N.Y. Feb. 19, 2013); *Castillo v. Gen. Motors Co. (In re Motors Liquidation Co.)*, Adv. No. 09-00509, 2012 Bankr. LEXIS 1688 (Bankr. S.D.N.Y. Apr. 17, 2012), *aff'd*, 500 B.R. 333 (S.D.N.Y. 2013); *see also In re Motors Liquidation Co.*, 2011 WL 6119664 (Bankr. S.D.N.Y. 2010).

---

[2] New GM's obligations under the Sale Order and Injunction have been the subject of ongoing proceedings in the New York Bankruptcy Court, the U.S. District Court for the Southern District of New York ("New York District Court"), and the United States Second Circuit Court of Appeals. *See In re Motors Liquidation Co.*, 829 F.3d 135 (2d Cir. 2016) ("Second Circuit Opinion"); Judgment entered by the New York Bankruptcy Court, dated June 1, 2015 (Bankr. Dkt. No. 13177) ("June 2015 Judgment"), *In re Motors Liquidation Co.*, 541 B.R. 104 (Bankr. S.D.N.Y 2015), and Judgment entered by the New York Bankruptcy Court, dated December 4, 2015 (Bankr. Dkt. No. 13563) ("December 2015 Judgment").  The New York Bankruptcy Court's June 2015 Judgment was affirmed in part, reversed in part, and remanded in part by the Second Circuit.  There are ongoing proceedings in the New York Bankruptcy Court and the New York District Court related to a series of issues arising from the Second Circuit opinion. *See Order To Show Cause Regarding Certain Issues Arising From Lawsuits With Claims Asserted Against General Motors LLC ("New GM") That Involve Vehicles Manufactured By General Motors Corporation ("Old GM")*, entered by the New York Bankruptcy Court on December 13, 2016 (Bankr. Dkt. No. 13802).  A portion of the New York Bankruptcy Court's December 2015 Judgment is currently on appeal to the New York District Court.  It is undisputed that the New York Bankruptcy Court retains jurisdiction to interpret and enforce the Sale Order and Injunction.

26. Under 28 U.S.C. §§ 157(b) and 1334(b), the New York Bankruptcy Court had core jurisdiction to approve the 363 Sale and enter the Sale Order and Injunction. Thus, the determination of this Action, which involves the resolution of disputes concerning the interpretation and enforcement of the Sale Agreement and the Sale Order and Injunction, and the Bankruptcy Code necessarily invokes the jurisdiction of the New York Bankruptcy Court. *See In re Hereford Biofuels, L.P.*, 466 B.R. 841, 844 (Bankr. N.D. Tex. 2012) (post-confirmation dispute regarding interpretation and enforcement of a sale transaction approved by the Bankruptcy Court was a core proceeding); *Luan Investment S.E. v. Franklin 145 Corp.*, 304 F.3d 223, 229–30 (2d. Cir. 2002) (disputes concerning sale transaction approved by the Bankruptcy Court fall within "core" jurisdiction); *In re Eveleth Mines*, *LLC*, 312 B.R. 634, 644–45 and n.14 (Bankr. D. Minn. 2004) ("A purchaser that relies on the terms of a bankruptcy court's order, and whose title and rights are given life by that order, should have a forum in the issuing court.").

27. Plaintiffs' claims in this Action relate to a vehicle manufactured by Old GM, seek to hold New GM liable for Old GM conduct, and assert a claim for punitive damages based in whole or in part on the conduct of Old GM. *See* Pet. ¶¶ 29, 170–71, 182–83, 200, 229–30. New GM, however, did *not* assume claims for punitive damages based on the conduct of Old GM. *See* Sale Agreement, § 2.3(b)(ix); December 2015 Judgment, ¶ 6 ("New GM did not contractually assume liability for punitive damages from Old GM. Nor is New GM liable for punitive damages based on Old GM conduct under any other theories, such as by operation of law. Therefore, punitive damages may not be premised on Old GM knowledge or conduct, or anything else that took place at Old GM."); *In re Motors Liquidation Co.*, 571 B.R. 565, 580 (Bankr. S.D.N.Y. 2017) ("…Post-Closing Accident Plaintiffs may not assert claims against New GM for punitive damages based on the conduct of Old GM.").

28. In addition, the Petition contains allegations that require interpretation and application of the New York Bankruptcy Court's definition of independent claims because, among other things, the Petition alleges that New GM manufactured or designed the Old GM vehicle, or performed other actions relating to the Old GM vehicle before the closing of the 363 Sale. *See* December 2015 Judgment, ¶ 18.

29. The Petition also contains a "fraudulent misrepresentation/fraudulent concealment" claim, which is based, at least in part, on Old GM Conduct. Such claim also requires interpretation of the Sale Order and Injunction and the New York Bankruptcy Court's December 2015 Judgment, which provides that "[c]laims with respect to Old GM Vehicles that are based on fraud (including, but not limited to, actual fraud, constructive fraud, fraudulent concealment, fraudulent misrepresentation, or negligent misrepresentation) or consumer protection statutes are not included within the definition of Product Liabilities, and therefore do not constitute Assumed Liabilities . . . ." *See id.*, ¶ 19.

30. The New York Bankruptcy Court has exercised "gatekeeping" jurisdiction with respect to plaintiffs who (i) are not asserting claims arising from Subject Vehicles with the Ignition Switch Defect (both as defined by federal cases), (ii) are seeking punitive damages against New GM in violation of the Sale Order and Injunction, and (iii) are asserting other substantive claims not solely based on the conduct of New GM. In fact, the New York Bankruptcy Court has stated that it is the "gatekeeper" that will decide what allegations, claims and requests for damages get through the bankruptcy "gate." *In re Motors Liquidation Co.*, 586 B.R. 217, 222 (Bankr. S.D.N.Y. 2017) ("'The Court's role, then, is a 'gatekeeper' role. It should be the court to decide what claims and allegations should get through the 'gate,' under the Sale

Order' and this Court's prior decisions." (quoting *In re Motors Liquidation Co.*, 541 B.R. 104, 112 (Bankr. S.D.N.Y. 2015))).

31.    The Petition in this matter necessarily requires judicial construction and/or interpretation of the Sale Agreement, the Sale Order and Injunction, and federal court rulings.

32.    This case is fundamentally different than the *Synott v. General Motors LLC*, 14-md-2543 (JMF) case. In Judge Furman's *Opinion and Order*, dated November 9, 2017 [MDL ECF No. 4797], the court found that the lawsuit would be remanded because (i) the Second Circuit Opinion allowed the *Synott* plaintiff's lawsuit (involving a Cobalt-Ion vehicle) to proceed against New GM "despite the 'free and clear' provisions in the Sale Order" (*id.* at 6), and (ii) the New York Bankruptcy Court had settled the question about whether plaintiffs could pursue punitive damages against New GM based on Old GM conduct (the plaintiff in *Synott* sought punitive damages in violation of settled precedent, but represented that she would amend her Complaint to strike her punitive damages request upon remand) (*id.* at 6-7).[3] In contrast, Plaintiffs' lawsuit here is not governed by the Second Circuit Opinion because the subject 2006 Cadillac DTS was not subject to the Ignition Switch recalls that were at issue in the Second Circuit Opinion, and Plaintiffs have not demonstrated a due process violation with respect to the 363 Sale, and therefore remain fully bound by the Sale Order and Injunction and Sale Agreement. In addition, Plaintiffs are seeking punitive damages against New GM based on Old GM conduct, and have not agreed to strike such request from their Petition. Further, the Petition contains claims and allegations that require interpretation of the Sale Order and Injunction, the Sale Agreement, and other New York Bankruptcy Court rulings. Thus, the *Synott* ruling does not

---

[3] The New York Bankruptcy Court's punitive damages ruling is currently the subject of two appeals pending in the United States District Court for the Southern District of New York. *See* Case Nos. 1:17-cv-06088-JMF (S.D.N.Y.), 1:17-cv-08294-JMF (S.D.N.Y.).

apply here. Accordingly, the Action implicates the New York Bankruptcy Court's core, related to and exclusive jurisdiction, and is therefore removable to this Court under 28 U.S.C. §§ 1452(a) and Bankruptcy Rule 9027.

### REMOVAL IS TIMELY

33. This Notice of Removal is timely because it is being filed within 30 days after New GM was served with the Summons and Petition. 28 U.S.C. §1446(b). Plaintiffs filed suit on November 22, 2017, and New GM was served with the Summons and Petition on December 14, 2017. *See* Exhibit H.

### VENUE

34. The United States District Court for the Western District of Texas, El Paso Division, is the United States District Court embracing County Court at Law No. 7, El Paso, Texas, where this action was filed and is pending. *See* 28 U.S.C. § 94(b)(1). Therefore, venue of this removed action is proper in this Court.

### CONSENT

35. Moreover, New GM is the only properly joined defendant to be served with process. Consent of other named defendants that have been improperly joined is not necessary for removal. *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (noting that "a removing party need not obtain the consent of a co-defendant that the removing party contends is improperly joined").

### NOTICE TO THE STATE COURT

36. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on all adverse parties and filed with County Court at Law No. 7, El Paso, Texas.

## STATE COURT FILINGS

37. New GM files herewith as Exhibit H copies of all process served upon it in this Action as part of this Notice, such being the Summons and Petition.

WHEREFORE, Defendant General Motors LLC respectfully requests that this Action in County Court at Law No. 7, El Paso, Texas, be removed to this Court, and that no further proceedings be had in the Texas state court.

Dated this 16th day of January, 2018.

>Respectfully submitted,
>
>*/s/ Kyle H. Dreyer*
>**KYLE H. DREYER**
>Texas Bar No. 06119500
>**HARTLINE DACUS BARGER DREYER LLP**
>8750 North Central Expressway, Suite 1600
>Dallas, Texas 75231
>Telephone:    (214) 369-2100
>Facsimile:    (214) 369-2118
>kdreyer@hdbdlaw.com
>
>**ATTORNEYS FOR DEFENDANT**
>**GENERAL MOTORS LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Texas Rules of Civil Procedure on this 16th day of January, 2018.

>*/s/ Kyle H. Dreyer*
>**Kyle H. Dreyer**